Donald E. JONES, Plaintiff,

v.

The CITY OF ELIZABETH CITY, NORTH CAROLINA, A Municipal Corporation, Defendant.

No. 90–16–CIV–2–D.

United States District Court, E.D. North Carolina, Elizabeth City Division.

Oct. 2, 1991.

Richard Woodson Rutherford, Anderson, Schiller, Rutherford & Geil, Raleigh, NC, for plaintiff.

Dewey W. Wells, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, for defendant.

## ORDER

DUPREE, District Judge.

Plaintiff, Donald E. Jones, brings this racial discrimination action against defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Article 1, Section 19, of the North Carolina Constitution. The action arises from defendant's refusal to promote plaintiff to the position of warehouse manager of the Finance Department of the City of Elizabeth City and for defendant's allegedly retaliatory transfer of plaintiff to another department after plaintiff filed a charge of racial discrimination against the defendant with the Equal Employment Opportunity Commission ("EEOC"). As relief, he seeks compensatory damages, punitive damages, attorneys' fees and expenses, and injunctive relief. The action is currently be-

fore the court on defendant's motion for summary judgment. For the reasons set out below the motion will be denied in part and granted in part.

The action arises out of plaintiff's application on or about July 18, 1988, for the position of warehouse manager in the Purchasing Department of Elizabeth City's Finance Department. At the time of plaintiff's application, he had been employed by defendant since 1980. From 1980 to 1982 he served as a warehouseman in defendant's Purchasing Department. He was made a warehouse records and stock clerk in the Finance Department in 1982 and he served in this capacity until 1988. Upon the resignation of the warehouse manager in 1988 plaintiff, a black male, applied for the job and was interviewed for the position along with three other current employees and fifteen outside applicants. Six of the nineteen candidates interviewed were black and thirteen were white. The interviewing committee was composed of Merilous Cline, purchasing agent for the city, Barbara Carraway, director of finance for the city, and Katherine Felton, director of personnel for the city. Ms. Cline and Ms. Carraway are white and Ms. Felton is black. The committee was told by Marvin Davis, the City Manager, to choose a final candidate to recommend for the position.

The committee recommended that William Montell Cartwright, a white male, be promoted to the position of warehouse manager, and this recommendation was accepted by Davis on or about August 15, 1988. The committee members testified by affidavit that Cartwright was chosen because he was the best candidate for the job and that race had played no part in the decision. Plaintiff, conversely, maintains that he was denied the promotion because of his race and filed a charge of racial discrimination against defendant with the EEOC and was issued a right to sue letter. On May 8, 1989, plaintiff was transferred from his position of stock clerk in the warehouse to a position with the Department of Public Works. Although the new position offered the same salary, the duties involved performing patchwork on streets in Elizabeth City and digging ditches. Although defendant contends that the transfer

was made to increase the overall functioning and efficiency of the warehouse department, plaintiff argues that the transfer was retaliatory, designed to punish him for filing a charge with the EEOC. Plaintiff filed a retaliation charge with the EEOC and was issued a right to sue letter on this claim as well.

Plaintiff brought the present action against the city, and defendant moved for summary judgment, asserting that all of plaintiff's claims fail as a matter of law and that summary judgment is therefore appropriate.

■ In resolving a summary judgment motion, the court must grant the motion only when the pleadings, affidavits and depositions show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Smith v. University of North Carolina*, 632 F.2d 316 (4th Cir.1980). The facts, as well as the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1004 (4th Cir.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). Courts should be wary about granting summary judgment motions in cases raising discrimination claims since a party's state of mind is often a crucial element in such cases. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). However, summary judgment is appropriate in such cases where there merely exists some alleged factual dispute between the parties that does not rise to the level of a "genuine issue of material fact." *Ballinger, supra*, 815 F.2d at 1005. Furthermore, the motion should be granted when a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991).

## I. TITLE VII CLAIMS

### a. *Failure to Promote Claim*

■ A plaintiff in a failure-to-promote suit can make a prima facie case of racial discrimination in one of two ways. First, he can offer direct evidence of discrimination or indirect evidence whose cumulative probative force would support a reasonable probability the inference that but for plaintiff's race, he would have been promoted. *Lovelace v. Sherwin–Williams Company,* 681 F.2d 230, 240 (4th Cir.1982). Alternatively, plaintiff can make a prima facie case of racial discrimination by meeting the requirements of the framework set out in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. Recently, the Supreme Court clarified that framework in regard to failure-to-promote cases arising under Title VII. In such cases, a plaintiff must prove by a preponderance of the evidence that he is a member of a protected group, that he applied for and was qualified for an available position, that he was rejected, and that after he was rejected, defendant either continued to seek applicants for the position or, as is alleged here, filled the position with a white employee. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989). Proof of a prima facie case gives rise to an inference of discrimination. To rebut this inference, the employer must present evidence that the employee was rejected for a legitimate non-discriminatory reason. If the defendant meets this burden, plaintiff is then given a chance to show that the employer's proffered reasons are merely pretextual. *Mallory v. Booth Refrigeration Supply Company, Inc.,* 882 F.2d 908, 910 (4th Cir.1989).

■ Plaintiff has offered no direct evidence and insufficient indirect evidence that race was a factor in the defendant's decision not to promote him. Therefore in order to avoid summary judgment, he must satisfy the *McDonnell Douglas/Patterson* analysis. Clearly, plaintiff has made a prima facie case under this framework. He is a black male and he applied for an available position that would have constituted a promotion for him. Although there is some discrepancy as to the degree of plaintiff's qualifications in regard to every facet of the job of warehouse manager, the evidence presented by both sides suggests that he was qualified for the position. Nevertheless, he was rejected for the position and instead a white employee was hired.

■ In its motion for summary judgment, defendant asserts that even if plaintiff was successful in establishing a prima facie case, plaintiff was denied the promotion for a legitimate business reason, namely that Cartwright was the most qualified candidate. If true, this is a valid defense to a discrimination claim brought under Title VII. Consequently, plaintiff must show that defendant's stated reasons are merely pretextual. In doing so plaintiff's evidence may take a variety of forms. He can show that he was in fact better qualified for the position than the white applicant eventually hired by defendant to fill the position. *Patterson, supra,* 491 U.S. at 186, 109 S.Ct. at 2378. In addition, plaintiff could attempt to show that defendant has engaged in past discriminatory hiring practices concerning blacks and that this past behavior is sufficient to create an inference that defendant acted in a similar fashion in the instant case. *Id.*

■ Plaintiff's affidavits and exhibits suggest that plaintiff was better qualified for the warehouse manager position than was Cartwright. Furthermore, plaintiff's past job evaluations do not illustrate the degree of deficiency in attitude and initiative that defendant claims plaintiff exhibited in the past and which were supposedly a factor in the denial of his promotion. In addition, the allegedly superior qualifications possessed by Cartwright are not reflected in the copies of Cartwright's employment history submitted by plaintiff. Indeed, the records show that Cartwright possessed only limited warehouse experience prior to the promotion. Similarly, the fact that Cartwright was supposedly asked to resign by the very committee that hired him five months after he started the job belies defendant's assertion that Cartwright was more qualified that plaintiff.

While plaintiff has not alleged direct incidents of racism on the part of defendant against him, he has offered some evidence as

to racial problems that have plagued Elizabeth City over the past several years. While defendant contends that from 1986 to 1988 seven blacks applied for and received promotions in the municipality, plaintiff argues that these promotions occurred only due to growing pressure from the NAACP. Indeed, the record shows that a lawsuit by the NAACP against the city alleging discriminatory practices was settled in 1985.

While it is far from certain that plaintiff will prevail on this claim at trial, we cannot say that there is no genuine issue of material fact present based on all the evidence. Therefore the defendant's motion for summary judgment on the failure-to-promote claim under Title VII is denied.

### b. *Retaliation Claim*

Plaintiff also alleges that his employment position was downgraded in retaliation for his filing of the EEOC claim in violation of 42 U.S.C. § 2000e–3(a). Section 2000e–3 prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII. *Crowley v. Prince George's County, Maryland,* 890 F.2d 683, 687 (4th Cir.1989).

█ In order to establish a prima facie case of retaliation under Title VII, a plaintiff must prove: (1) that he was engaged in protected activity; (2) that the employer took adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action. *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991).

If the plaintiff succeeds in making a prima facie case, defendant can rebut the inference by showing a legitimate non-discriminatory reason why the adverse action took place. At that point, plaintiff has the burden of proving that the action taken was the motivating factor in the decision to take the adverse action. *Id. See Price Waterhouse v. Hopkins,* 490 U.S. 228, 244, 109 S.Ct. 1775, 1787, 104 L.Ed.2d 268 (1989).

█ Reviewing the facts in the light most favorable to the plaintiff, we believe that plaintiff has made a prima facie case of retaliation. First, he engaged in protected activity by filing the EEOC charge. Second, he was transferred to a less desirable position soon afterwards. Defendant argues that the transfer was not a demotion given that plaintiff's new position was lateral in nature to his earlier position and that plaintiff maintained the same salary level. However, contrary to defendant's assertion, several courts have held that an adverse job action, for purposes of a retaliation claim, can exist in a lateral transfer even where the transfer did not result in a reduction of pay or benefits. *See Collins v. State of Illinois,* 830 F.2d 692, 702 (7th Cir.1987); *Rodriguez v. Board of Education,* 620 F.2d 362, 364–66 (2d Cir. 1980); *Goodwin v. Circuit Court,* 729 F.2d 541, 550 (8th Cir.), *aff'd on second ground,* 741 F.2d 1087 (8th Cir.1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 339 (1985). In the present case we believe plaintiff has sufficiently established an adverse job action in that he went from an indoor employment position to a fairly demanding position that required him to patch streets and dig ditches outdoors. Third, plaintiff's proof of a causal connection between the protected activity he engaged in and his transfer was that the transfer occurred several months after defendant became aware that he had filed a charge with the EEOC. While this evidence far from conclusively establishes the requisite causal connection, it does satisfy the less demanding burden of making a prima facie case of causality. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989).

█ Defendant contends that the transfer was made not out of retaliation but rather in the best interests of the city. Defendant emphasizes the small number of employees that work in the warehouse and the resulting necessity of a positive attitude by all the warehouse employees as well as a good morale on the part of the group. Consequently, they claim that plaintiff's alleged attitude problems were impinging on not only his own work but also on the efficiency of the entire group and that the transfer was made to improve the overall functioning of the warehouse. Defendant further states that the Department of Public Works was shorthanded at the time of the transfer and that they

felt plaintiff could readily help that department, particularly in light of his experience with the city. Since defendant has asserted a legitimate non-discriminatory reason for the transfer, plaintiff must offer evidence that the asserted reason is merely pretextual. Plaintiff alleges that defendant's explanation is false. He points to his job evaluations over the course of his employment with the city as proof that defendant did not begin to voice concerns about his attitude and initiative until 1988, after he filed the EEOC claim. Plaintiff also states that although he was told his transfer to the Department of Public Works was only temporary, he has remained in that position for the past two years and that Davis, the City Manager, filled his warehouse position.

Plaintiff has also submitted the report issued by the city's Personnel Appeals Grievance Committee, which confirmed plaintiff's assertion that although the transfer was originally considered to be temporary, the job was advertised as vacant by Davis on May 15, 1989. The committee also found that plaintiff's request to be transferred back to the Finance Department was rejected and plaintiff was not notified that his transfer had become permanent until notice was sent to him dated March 11, 1991, stating that the transfer was no longer temporary because it had lasted beyond one year.

None of this, however, is sufficient to meet plaintiff's burden of showing that defendant's asserted reasons for the transfer were pretextual. Defendant has submitted affidavits by Davis, the City Manager, and Carraway, the Director of Finance, that the transfer was made to increase the efficiency of the office. Defendant has asserted that plaintiff's attitude problems and lack of initiative coupled with a morale problem in the warehouse and a shortage of workers in the Department of Public Works led to plaintiff's transfer. Plaintiff simply has not asserted enough evidence to impugn this claim.

■ An employer has not only the right but the duty to discharge or discipline an employee who causes a negative effect on employee morale and the efficiency of the department. *Dwyer v. Smith,* 867 F.2d 184, 191 (4th Cir.1989). Nowhere in plaintiff's

affidavit is there any direct evidence that refutes defendant's proffered explanation of the reason for the transfer. Simply alleging that employment evaluations from past years did not reveal a significant attitude problem is no proof that such a problem did not present itself in the months prior to the transfer. Plaintiff has also failed to show that the asserted shortage of manpower at the Department of Public Works did not exist. Finally, plaintiff was unable to dispute the claimed morale problem in the warehouse. Mere knowledge on the part of an employer that an employee has filed an EEOC charge is not enough to establish a presumption that any adverse employment action taken against that employee was retaliatory. *Williams v. Cerberonics, supra,* 871 F.2d at 457.

■ The fact that motive is often the critical issue in a discrimination claim does not mean that summary judgment is never an appropriate vehicle for resolution of a case. *International Woodworkers of America v. Chesapeake Bay Plywood Corporation,* 659 F.2d 1259, 1272 (4th Cir.1981). Since plaintiff has failed to meet his burden, defendant's motion for summary judgment on the retaliation claim is granted.

## II. SECTION 1983 CLAIM

Plaintiff also seeks relief pursuant to 42 U.S.C. § 1983 for defendant's alleged violations of his rights under the United States Constitution. Plaintiff alleges that by denying him the promotion to warehouse manager, defendant discriminated against him on the basis of race in violation of the equal protection clause of the Fourteenth Amendment.

■ Municipalities are not liable on a respondeat superior principle for all constitutional violations that are committed by their employees simply because of the employment relationship. Instead, municipal liability arises only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services of the City of New York,* 436

U.S. 658, 692–94, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). While municipal policy is found most obviously in ordinances and regulations which explicitly authorize constitutional violations, it may also occur in formal or informal policy choices or decisions by municipal officials authorized to make and implement municipal policy. *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988).

■■■■ Under *Monell* and its progeny, a municipality can be bound with regard to liability under Section 1983 by a decision made by one who possesses policymaking authority for the municipality. *See St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The question of whether an official possesses such authority is a legal question to be answered by reference to state and local law. *Jett v. Dallas Independent School District*, 491 U.S. 701, 736, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598 (1989). In its motion for summary judgment, defendant offers the affidavits of Carraway, Felton and Cline, the members of the committee who recommended Cartwright over plaintiff for the promotion, to show that the committee members did not have policymaking authority for the municipality. They contend that Davis, who did possess such authority, merely went along with the committee's recommendation without independent consideration of the qualifications of the applicants. Consequently, they assert, the decision to promote Cartwright was not made by one with policymaking authority for purposes of Section 1983.

■■■■ A party opposing a summary judgment motion cannot resist such a motion by resting merely on the allegations or denials in its pleadings. *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir.1988). Rule 56(e) of the Federal Rules of Civil Procedure requires that the non-moving party put forth affidavits or other evidence showing that there is a genuine issue for trial. *Celotex Corporation v. Catrett, supra*, 477 U.S. at 324, 106 S.Ct. at 2553. In his complaint plaintiff alleges that the denial of the promotion was attributable to Davis and that Davis possesses policymak-

ing authority for the municipality. However, in his affidavit opposing defendant's summary judgment motion, he has failed to offer any additional evidence in regard to those allegations. Since this information comprises elements essential to plaintiff's case and on which he will have the burden of proof at trial, we conclude that plaintiff has failed to meet his duties under Rule 56. Accordingly, defendant's motion for summary judgment is granted as to plaintiff's Section 1983 claim.

### III. SECTION 1981 CLAIM

Plaintiff also seeks relief pursuant to 42 U.S.C. § 1981. He alleges that his failure to receive the promotion was racially motivated and therefore a violation of his right to make a contract as protected under that statute.

In *Jett v. Dallas Independent School District*, the Supreme Court held that in order to prevail against a state actor in a suit brought under Section 1981, the plaintiff must comply with the same requirements that must be met in a suit brought under Section 1983. 491 U.S. at 735–36, 109 S.Ct. at 2722–23. Since plaintiff's affidavit opposing defendant's summary judgment motion failed to offer evidence that the promotion decision was implemented by an official possessing final policymaking authority for the municipality, plaintiff's Section 1981 claim—like his Section 1983 claim—fails as a matter of law. Consequently, defendant's motion for summary judgment is granted as to plaintiff's Section 1981 claim.

### IV. PLAINTIFF'S REMAINING CLAIMS

Plaintiff also alleges that defendant's actions violated Article 1, Section 19, of the North Carolina Constitution. However, defendant failed to discuss this claim in its brief supporting its motion for summary judgment, and the plaintiff has addressed the claim only by way of an allegation in his complaint.

Apparently the basis of plaintiff's claim is that he has been denied equal protection under the North Carolina Constitution. But the constitutional basis for plaintiff's claim under Title VII is the equal protection clause

of the United States Constitution which the North Carolina Constitution essentially tracks. Thus, the plaintiff's claim under the latter constitution is simply redundant, and the defendant's motion to dismiss this claim will be granted.

## V. CONCLUSION

In sum, defendant's motion for summary judgment is denied as to plaintiff's failure-to-promote claim brought under Title VII but is granted as to plaintiff's Section 1983 claim, Section 1981 claim, the retaliation claim brought under Title VII, and the claim under the North Carolina Constitution.

SO ORDERED.