35 F.3d 555
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Bernadette P. FORD, Plaintiff-Appellant,
v.
E-SYSTEMS, INCORPORATED, Melpar Division; Joseph C. Thomas,
Iii, Defendants-Appellees.
 No. 94-1013.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 16, 1994.
Decided Sept. 14, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, District Judge. (CA-93-1130)
 Sol Zalel Rosen, Arlington, Va., for appellant.
 Paul C. Skelly, William P. Flanagan, Hogan & Hartson, L.L.P., McLean, Va., for appellees.
 E.D.Va.
 AFFIRMED.
 Before WILKINSON and NIEMEYER, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Bernadette Ford appeals from the district court's order granting summary judgment in favor of E-Systems, Inc., and Joseph Thomas in Ford's employment discrimination action. Ford, an African American woman and a former employee of E-Systems, alleged that E-Systems and Thomas violated the Equal Pay Act, 29 U.S.C. Sec. 206(d)(1) (1988); that she was discriminatorily denied a merit raise in violation of 42 U.S.C.A. Sec. 1981 (West Supp.1994); and that she was discharged in retaliation for filing the current lawsuit. We find the evidence insufficient to support Ford's claims, and affirm.
 
 
 2
 * To state a prima facie case under the Equal Pay Act, 29 U.S.C. Sec. 206(d)(1), Ford must show she was paid less than an identified male coemployee performing work substantially equal in skill, effort, and responsibility under similar working conditions. Houck v. Virginia Polytechnic Inst., 10 F.3d 204, 206 (4th Cir.1993). Ford must identify a particular male comparator; she may not compare herself to a hypothetical male. Id.
 
 
 3
 We reject Ford's claim because she did not compare herself to a male counterpart of like skill, or job responsibilities. Ford compared herself to Charles Weaver. In her initial deposition, Ford acknowledged that Weaver had different job responsibilities, more education, more experience, and had worked in that division for ten years. Additionally, Weaver was the person who was primarily responsible for Ford's training. While Ford's later affidavit contradicts her earlier concessions, this is not sufficient to raise a material factual dispute. See Rohrbough v. Wyeth Laboratories Inc., 916 F.2d 970, 976 (4th Cir.1990).
 
 II
 
 4
 Under 42 U.S.C. Sec. 1981, all persons are guaranteed the same right "to make and enforce contracts." To state a prima facie case of race discrimination under Sec. 1981, Ford must show that: (1) she is a member of a protected class; (2) she qualified for a merit raise; (3) despite her qualifications, she was denied the merit raise; and (4) E-Systems subsequently treated white employees more favorably. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-35 (4th Cir.1991). Alternatively, Ford need not rely on the McDonnell Douglas test. Instead, Ford could show by direct or circumstantial evidence that but for her race, she would have received a merit increase. See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir.1982).
 
 
 5
 Ford seeks to prove that she was qualified for the merit increase by showing that she scored high on past performance appraisals and received raises. This argument, however, fails to take into account her performance in the new position, which she acknowledges was extremely different from anything she had ever done before, during the relevant period. Ford's conclusory evidence that she was doing a fine job and was entitled to a better appraisal is insufficient to raise a material factual dispute.
 
 
 6
 Even assuming Ford was entitled to the merit raise, she failed to produce any evidence that she was denied this raise because of her race or that white employees were treated more favorably. Ford merely argues that the performance appraisal given to her by Thomas, her supervisor, was inaccurate, and concludes that the denial of a merit increase was racially motivated. However, the record demonstrates that Thomas in fact recommended that Ford receive a raise. Ford makes the bald allegation that some person, not of her protected group, was treated differently. However, Ford did not identify this person, nor did she state how the treatment was different. Accordingly, we reject this argument.
 
 III
 
 7
 Ford and three white, male employees were laid off shortly after Ford filed the present action. E-Systems subsequently offered Ford another position at the same pay, but at a site twenty miles away. Ford declined this position. Ford alleges that she was fired in retaliation for the filing of her lawsuit, and that the white male employees were laid off as a subterfuge for E-Systems to cover its unlawful firing.
 
 
 8
 To establish retaliatory discharge, Ford must show that she engaged in a protected activity; that E-Systems took adverse employment action against her; and that a causal connection exists between the protected activity and the adverse action. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). Once Ford makes this prima facie case, E-Systems must rebut it by showing legitimate nonretaliatory reasons for the adverse action. Id.
 
 
 9
 Ford engaged in the protected activity of filing a lawsuit against E-Systems, and E-Systems took adverse employment action when they subsequently laid her off. Ford's claim fails, however, because she cannot show a causal connection between these two events, and E-Systems has proffered legitimate nonretaliatory reasons for her discharge. The unrebutted evidence reveals that prior to the filing of Ford's lawsuit, E-Systems was in the process of a massive staff reduction because of a decrease in defense contract spending. Ford had previously been determined to be of lesser value to the company. Moreover, none of the positions were filled after the layoffs.
 
 
 10
 Ford counters this evidence by stating that she had just been assigned to work a new contract that would provide her employment for two years. Ford argues that this raises an inference that E-Systems was not contemplating laying her off prior to the law suit. Ford's argument is not supported by the record. While it is true that she was recently assigned to work on a new contract, the evidence establishes that this was not an absolute guarantee of employment for any specific amount of time. Moreover, Ford offers no evidence to support her argument that the white employees were laid off as a subterfuge to hide discrimination. Accordingly, Ford has not sustained her burden of showing retaliatory discharge, and E-Systems has shown legitimate nonretaliatory reasons for the discharge.
 
 
 11
 We therefore affirm the order of the district court granting summary judgment in favor of E-Systems and Thomas. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED